UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 5:18-CR-423 |
| | § | |
| EDGAR GEOVANI-LUNA | § | |

## ORDER

Defendant pleaded guilty to illegally entering the United States after removal, (Dkt. Nos. 17, 20), but has since moved to withdraw his guilty plea and dismiss his indictment, arguing that the Supreme Court's recent decision in *Pereira v. Sessions* invalidated his underlying removal order, (Dkt No. 28). Having considered the facts and applicable law, Defendant's Motion to Dismiss the Indictment (Dkt. No. 28) is **DENIED**.

### I. BACKGROUND

Prior to being arrested for the present offense, an immigration judge ordered Defendant removed from the United States because he was a noncitizen who had neither been admitted nor paroled. (Dkt. No. 28 at 16). Defendant's first notice to appear (NTA) at an immigration hearing did not indicate the place, date, or time of the hearing, but he later received a notice with that information. (Dkt. Nos. 28 at 18; 32-3). But Defendant failed to appear at his hearing and was ordered removed to Guatemala; he did not appeal that decision. (Dkt. Nos. 28 at 16–17; 32-1).

Subsequently, Defendant was again found in the United States and charged with illegal re-entry in violation of 8 U.S.C. § 1326. (Dkt. No. 12). He pleaded guilty before Magistrate Judge Diana Song Quiroga on July 31, 2018, (Dkt. Nos. 17, 20), but

now seeks to withdraw that plea and to dismiss the indictment, alleging jurisdictional defects caused by a defective NTA. (Dkt. No. 28).

## II. ANALYSIS

A removal proceeding begins when an NTA is filed in immigration court. *Garcia-Perez v. Holder*, 558 F. App'x 343, 346 (5th Cir. 2013). Without a valid NTA, which serves as the official charging instrument, an immigration court lacks subject matter jurisdiction. *See* 8 C.F.R. §§ 1003.13–14, 1239.1; *DeLeon-Holguin v. Ashcroft*, 253 F.3d 811, 814–15 (5th Cir. 2001). Section 1229(a) of the Immigration and Nationality Act (INA) provides that an NTA must contain, among other information, the "time and place at which [removal] proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). However, for the past two decades, immigration authorities have relied on a Justice Department regulation that requires NTAs to contain time and place information only "where practicable." 8 C.F.R. § 1003.18. The Department of Homeland Security (DHS) "almost always serves noncitizens with notices that fail to specify the time, place, or date of initial removal hearings." *Pereira v. Sessions*, 138 S. Ct. 2105, 2111 (2018).

The Supreme Court recently called that practice into question. In *Pereira v. Sessions*, the Supreme Court held that an NTA without a place and time "is not a notice to appear under Section 1229(a)." *Id.* at 2110 (internal quotation marks omitted). That decision was made in the context of determining whether a deficient NTA triggered the "stop-time rule," which would end an alien's period of continuous residence, affecting his or her application for cancellation of removal. *See id.* at 2112;

8 U.S.C. § 1229b(b)(1)(A). Though the Court was careful to limit its holding to that specific factual scenario, the reasoning was straightforward and general: The text of the INA expressly requires an NTA to list the time and place of the alien's removal hearing. *Pereira*, 138 S. Ct. at 2114 (citing 8 U.S.C. § 1229(a)). The DHS regulation permitting immigration authorities to omit that information directly contravenes the statutory text. *See id.* And because administrative agencies have no authority to modify unambiguous federal statutes, the regulation must yield. *Id.* at 2113–14 (citing *Chevron, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)).

Defendant challenges his prior removal order under *Pereira*, arguing that his underlying removal proceeding was defective on both jurisdictional and due process grounds. But while it is clear, post-*Pereira*, "that to trigger the stop-time rule, the Government must serve a notice to appear that . . . 'specif[ies]' the 'time and place' of the removal proceedings," *Pereira*, 138 S. Ct. at 2114, NTAs that lack time and place information may still be valid for purposes other than triggering the stop-time rule.

The *Pereira* Court, after all, mentioned only cancellation of removal proceedings and was careful to confine its language to that context. *See id.* at 2113–14 ("A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a notice to appear under section 1229(a), and so does not trigger the stop-time rule." (internal quotation marks omitted)). Additionally, the Court "remanded for further proceedings consistent with th[e] opinion." 138 S. Ct. at 2120. That it did not terminate the proceedings on jurisdictional grounds suggests the holding did not reach that far. Such a ruling

3

would require that every removal proceeding based on an NTA lacking time and place information be redone. The removal proceedings would be invalid both as to aliens who had been denied relief and ordered removed, *and* as to aliens who had been granted relief and perhaps who have been living in the United States lawfully for many years. The Supreme Court would not *implicitly* render such a disruptive holding.

This Court, however, need not reach the question of the immigration court's jurisdiction to resolve Defendant's Motion. Regardless of whether *Pereira* applies outside the cancellation context, or whether the immigration court had jurisdiction over the underlying removal proceeding, Defendant's collateral attack on the underlying removal order fails under § 1326(d). Under that provision, a defendant must demonstrate the following to collaterally attack an underlying removal order: (1) he exhausted any administrative remedies that may have been available to seek relief against the order;[1] (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review;[2] and (3) the entry of the order was fundamentally unfair.[3] 8 U.S.C. § 1326(d). In addition to those

---

[1] Defendants fail to exhaust their administrative remedies if they either waive their right to an administrative appeal or simply do not file one. *See, e.g., United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005); *United States v. Sandoval-Cordero*, 342 F. Supp. 3d 722, 731 (W.D. Tex. 2018).

[2] Waiver of right or failure to file an appeal with the Fifth Circuit precludes a showing that the defendant was deprived of judicial review. *See* 8 U.S.C. § 1252(a) (general removal orders are subject to judicial review with a petition for review filed with the appropriate court of appeals); *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1109 (10th Cir. 2005).

[3] There is no fundamental unfairness in an NTA initially lacking time and place information when the defendant ultimately receives a time-and-place notice prior to his hearing. *See United States v. Saravia-Chavez*, 2018 WL 5974302, at *6 (W.D. Va. Nov. 14, 2018). Fundamental fairness concerns

4

three requirements, *Cordova-Soto*, 804 F.3d at 719, a defendant must show actual prejudice[4] to prevail under § 1326(d), *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999).

Precedent dictates that a defendant must make those four § 1326(d) showings even where a jurisdictional challenge is levied against the tribunal that issued the underlying removal order. *See United States v. Hernandez-Lopez*, 2018 WL 6061076, at *4 (W.D. Tex. Dec. 3, 2018) (holding that removal orders that are "allegedly invalid or unlawful based on a jurisdictional defect" may nevertheless "serve as the predicate for § 1326 prosecutions so long as the defendant has an opportunity for administrative and judicial review of any errors."). In a case where a defendant failed to satisfy all the § 1326(d) requirements, the Fifth Circuit upheld an illegal-reentry conviction against that defendant even though the body that issued the underlying removal order lacked jurisdiction. *United States v. Castelan-Jaimes*, 575 F. App'x 253, 254–55 (5th Cir. 2014). Other circuits have likewise held that there is no exception to the collateral-attack requirements.[5] And the Supreme Court itself has previously

---

are especially unwarranted when the defendant appeared in person at his removal hearing because "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

[4] To show actual prejudice, a defendant must "demonstrate that there is a reasonable likelihood that but for the errors complained of he would not have been deported." *United States v. Villanueva-Diaz*, 634 F.3d 844, 852 (5th Cir. 2011) (internal alterations and quotation marks omitted).

[5] *See United States v. Earle*, 488 F.3d 537, 547 (1st Cir. 2007) (holding that the "lawfulness of [a prior] deportation is not an element of § 1326"); *United States v. Alvarado-Delgado*, 98 F.3d 492, 493 (9th Cir. 1996) (en banc) (same); *United States v. Paredes-Batista*, 140 F.3d 367, 376 (2d Cir. 1998) ("Section 1326 does not, on its face, require that the earlier deportation have been 'lawful' to support a conviction for illegal reentry.").

indicated that any removal order may form the basis of a subsequent illegal-reentry prosecution if it was not obtained in violation of due process. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 833–35 (1987) (noting that while due process requires an opportunity for meaningful review of removal orders, "the language [of § 1326] suggests . . . no limitation" that it applies only where the underlying removal order was "lawful"). It is thus clear that even in light of *Pereira*, § 1326(d)'s "enumerati[on] [of] the specific requirements that must be satisfied in order for a defendant to collaterally attack a prior removal order . . . necessarily contemplates that flawed or invalid removal proceedings may still serve as the basis of a 'prior removal' in a § 1326(a) prosecution." *United States v. Zapata-Cortinas*, 2018 WL 6061076, at *8 (W.D. Tex. Nov. 20, 2018); *see also id.* ("[T]here is no indication that Congress or the *Mendoza-Lopez* Court intended to treat jurisdictional defects differently than any other type of 'unlawful' or invalid removal order.").[6]

The Court therefore concludes that (1) a removal order that suffers a

---

[6] Though subject-matter jurisdiction is generally not waivable during the underlying proceedings or on direct appeal, *see Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), it may be waived for a subsequent collateral attack, *see Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377–78 (1940) ("Whatever the contention as to jurisdiction may be," *res judicata* prohibits parties from "remain[ing] quiet and rais[ing] it in a subsequent suit."). The only exception to this rule is in "the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (citing *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)). For this exception to apply, the issuing court must have a "total want of jurisdiction[, which] must be distinguished from an error in the exercise of jurisdiction, and [occurs] only [in] rare instances of a clear usurpation of power." *Id.* (quoting *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661–62 (1st Cir. 1990)). Prior to *Pereira*, the immigration judge had no reason to suspect that jurisdiction was lacking. *See Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009) (reflecting the pre-*Pereira* understanding that "an NTA need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be satisfied"). Thus, the immigration court did not usurp any power and had an arguable basis for jurisdiction. *Hernandez-Lopez*, 2018 WL 6313292, at *4.

jurisdictional defect may nevertheless serve as the basis for an illegal-reentry prosecution, and (2) an illegal-reentry defendant must satisfy the requirements of § 1326(d) in order to collaterally attack an underlying removal order. Here, Defendant did not seek administrative or judicial review of his underlying removal order; after being notified of the place, date, and time of his hearing, he was released on bond and opted to flee. (Dkt. Nos. 28 at 16–17; 32-3; 32-4). That Defendant chose "not to make the attempt" to access an administrative or judicial appeals tribunal "does not mean that he was deprived of . . . judicial review." *United States v. Roque-Espinoza*, 338 F.3d 724, 729 (7th Cir. 2003).

Any equitable argument that Defendant should be excused from showing administrative exhaustion and deprivation of judicial review because any effort to appeal his underlying removal order would have been futile also fails. Courts generally may not waive exhaustion requirements on equitable grounds. *See United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002) ("Statutory exhaustion requirements such as that set forth in § 1326(d) are 'mandatory, and courts are not free to dispense with them.'" (quoting *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998))). Moreover, even though an appeal may have been difficult pre-*Pereira*, it would not necessarily have been futile—courts "would [not] have *lacked the power or authority* to declare Defendant's NTA deficient under the statute." *Zapata-Cortinas*, 2018 WL 6061076, at \*12 (emphasis in original). The Court, therefore, will not excuse Defendant from satisfying the administrative-exhaustion and deprivation-of-judicial-review requirements of Section 1326(d) on equitable

grounds.

Because Defendant has not met either of those requirements, the Court need not reach his allegation of fundamental unfairness. *See United State v. Mendoza-Mata,* 322 F.3d 829, 832 (5th Cir. 2003) ("If the alien fails to establish one prong of the three-part test, the Court need not consider the others." (citing *United States v. Encarnacion-Galvez,* 964 F.2d 402, 406 (5th Cir. 1992))). Defendant has not satisfied the conditions of § 1326(d) and thus may not collaterally attack his underlying removal order.

### III. CONCLUSION

For the above reasons, Defendant's Motion to Dismiss the Indictment (Dkt. No. 28) is **DENIED**. In light of this Order, Defendant will be given until March 11, 2019, to inform the Court whether he wishes to pursue withdrawal of his guilty plea.

It is so **ORDERED**.

**SIGNED** March 7, 2019.

_____
Marina Garcia Marmolejo
United States District Judge